ORIGINAL

FILED
MAY 19 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| RC Professional Services, Inc.<br>Sabanera del Rio<br>204 Camino del Guama<br>Gurabo, P.R. 00778<br>Plaintiff, | : | |
| v. | : | No. 08-359 C |
| THE UNITED STATES OF AMERICA<br>Defendant. | : | |

**COMPLAINT**

**A. PARTIES**

1. Plaintiff RC Professional Services, Inc. ("Plaintiff" or "RCPS") is a corporation, organized and existing under the laws of the Commonwealth of Puerto Rico; it is a small disadvantaged business, Veteran-owned, HUBZone and 8(a) certified contractor, as those terms are defined in regulations promulgated by the Small Business Administration.

2. Defendant is the United States of America acting through the Department of The U.S. Army Corps of Engineers ("COE").

**B. JURISDICTION**

3. Jurisdiction is founded upon the Contract Disputes Act, 41 U.S.C. 601 et seq (the "CDA"); the instant action is filed as an appeal from a Contracting Officer's Final Decision, as is more fully set forth, infra.

## C. BACKGROUND

4. On August 17, 2004 the COE requested sealed proposals for an indefinite quantity, indefinite delivery firm, fixed price contract for emergency temporary roof repairs for homes and buildings damaged by Hurricane Charley.

5. The proposals were requested by way of Solicitation Number W912EP-04-R-0039 ("the Solicitation").

6. The Solicitation provided as follows in Section 0010, Supplies or Services And Price/Costs.

EMERGENCY TEMPORARY ROOF REPAIRS FOR HOMES/BUILDING DAMAGED BY HURRICANE CHARLIE

| LINE ITEM | DESCRIPTION | QUANTITY | UNIT | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|
| | THE CONTRACTOR SHALL PROVIDE SUPPERVISION, LABOR, EQUIPMENT, AND MATERIALS NECESSARY TO MAKE TEMPORARY ROOF REPAIRS, PRIMARILY INSTALLATION OF GOVERN-MENT-FURNISHED PLASTIC SHEETING, IN SUPPORT OF USACE/FEMA EMERGENCY RESPONSE OPERATING FOR DISASTERS IN FLORIDA | | | | |
| 0001 | INSTALL GOVERNMENT FUR-NISHED PLASTIC (ESTIMATED QUANTITIES) | 20,000,000 | SQ.FT. | $_____ | $_____ |
| 0002 | FURNISH AND INSTALL STRUCTURAL PANELS (ESTIMATED QUANTITIES) | 2,500,000 | SQ. FT. | $______ | $_____ |
| 0003 | FURNISH AND INSTALL JOIST AND RAFTERS (ESTIMATED QUANTITIES) | 35,000 | LN. FT. | $______ | $_____ |
| 0004 | PREPARE SUBMITTALS AS LISTED IN SECTION 01000 | 1 | JOB | $______ | $_____ |

TOTAL OFFER (LINE ITEMS 0001 THRU 0004) $_____

NOTES: (1) OFFERORS MUST PRICE ALL LINE ITEMS, SEE PROVISION 52.236-28 (SECTION 00100)
(2) SEE SECTION 00100, "INSTALLATIONS TO OFFERORS"
(3) THE GOVERNMENT MAY AWARD UP TO 20 CONTRACTS UNDER THIS SOLICITATION. THE QUANTITIES SHOWN IN THE PRICING SCHEDULE REPRESENT THE GOVERNMENTS ESTIMATES OF THE TOTAL REQUIRED TO COMPLETE THE ENTIRE MISSION. THE GOVERNMENT WILL PURCHASE A MINIMUMOF $100,000.00 WORTH OF SERVICES UNDER EACH CONTRACT. THE MAXIMUM AMOUNT WILL BE ORDERED UNDER ALL CONTRACTS SHALL NOT EXCEED TOTAL FUNDING MADE AVAILABLE FOR THIS MISSION BY FEMA.

7. On page 33, the Solicitation included the following under the description of proposal requirements:

| FACTOR | SUBMISSION REQUIREMENT (Note: To ensure the Proposal adequately addresses areas the Government considers important, the offeror should review paragraph EVAL-3 in Section 00100B prior to preparing the proposal) |
|---|---|
| Evidence of Ability to Provide Acceptable Performance and Payment Bonds | In accordance with the Miller Act, payment and performance bonds will be required. Due to the emergency nature of this work, the Government wants to ensure prior to award that selected contractors have the ability to provide acceptable performance and payment bonds. Therefore, offerors must provide with their offer evidence of ability to provide bonding in the penal sum of $500,000 for performance and $1,000,000 for payment. Acceptable evidence includes the following:<br><br>(3) A letter of commitment from a corporate surety listed on the Department of Treasury Circular 570, "Companies Holding Certificates of Authority as Acceptable Sureties on Federal Bonds and Acceptable Reinsuring Companies."<br>(2) Statement of individual surety meeting all requirements of FAR section 28.203.<br>(3) Statement from one or more of the alternative sources Described in FAR section 28.204.<br><br>Successful offerors will be required to provide acceptable bonding within 2 workdays of receiving a contract award. Therefore, the offeror must ensure the evidence submitted With the proposal establishes the ability to do this. |

8. Offers in response to the Solicitation were due on August 18, 2004.

9. Amendment 0003 to the Solicitation provided as follows:

> SECTION 00100A-ADDITIONAL PROPOSAL PREPARATION/ SUBMISSION INSTRUCTIONS
>
> c. This contract is subject to the Robert T. Stafford Emergency Assistance Act. In accordance with FAR 26.201(a) "When contracting under this subpart for major disaster or emergency assistance activities, such as debris clearance, distribution of supplies, or reconstruction, preference shall be given, to the area affected by such major disaster or emergency."
> To comply with FAR 26.201(a), the solicitation is amended as follows:
>
> Section 00101B, paragraph EVAL-2 is deleted in its entirety and the following is substituted:
> EVAL Determining Best Value. The Government plans to award as many as 20 contracts under this solicitation. The first award will be made to the technically acceptable offeror who submits the lowest price, without regard to the locale where the offeror primarily does business. The first award will set the market price for this work. After the first award made, the Government will select the next 19 technically acceptable offerors based on (i) locale where the offeror primarily does business and (ii) the offeror's price. The 19 offerors will be afforded an opportunity to revise their prices downward to the market price. No more than 20 contracts will be awarded. If less than 20 contracts are awarded, awards will be made in the following order: First – firms doing business primarily in the declared disaster area with lowest initial prices. Second - after exhausting all eligible firms doing business primarily in the declared disaster area with lowest initial prices. To qualify as a firm doing business primarily in the declared disaster area, the firm must establish that at least 51% of its business within the last year was done in the declared disaster area.

10. Amendment 0003 also changed the due date for offers to August 19, 2004.

11. Plaintiff submitted a timely offer in response to the Solicitation, and included a letter from its Puerto Rico broker as proof of its bonding capacity.

12. On August 20, 2004, Plaintiff received notification that it had been awarded Contract No. W912EP-04-D-0010 ("the Contract"); the notification and the Contract (also dated August 20, 2004) were signed by Harley R. Hartley, Chief, Contracting Division and Contracting Officer.

13. According to the pricing schedule in the Contract, line item 0001 was priced at $0.27 per square foot, line-item 0002 was priced at $2.91 per square foot and line-item 003 was priced at $3.50 per linear foot; the Contract was for a maximum dollar value of $15,100,000.00 (based on the full quantities in the Solicitation).

14. By unilateral Modification P0003, dated August 23, 2004, the pricing schedule in the Contract was adjusted as follows:

| | | |
|---|---|---|
| line-item | 0001 | $1.99 per square foot |
| line-item | 0002 | $3.50 per square foot |
| Line-item | 0003 | $3.97 per square foot |

15. Under the procedures in place, work under the various contracts was to be assigned by way of the issuance of Rights of Entry ("ROEs").

16. Concurrent with the issuance of ROEs, each contractor was to be provided with Government issued plastic in 20' x 100' rolls (2000 sq ft) to be charged to the contractor at $0.10 per square foot (i.e., $200 per roll).

17. Plaintiff received a verbal "Notice to Proceed," concurrent with contract award; at that time it was issued some 539,000 square feet of roofing plastic by the COE; at the $1.99 per sq. ft. rate for roofing work under the Contract, the equivalent work would have had a value of $1,072,610.00 (539,000 x $1.99).

18. Plaintiff commenced work on the 24th of August, at the verbal instruction of the new Contracting Officer, Wanda Cruz.

19. Plaintiff and its subcontractors proceeded, and worked diligently through August 29, although its subcontractors continued to work until September 8, when the "Show Cause" letter was issued (see, infra)

20. On August 29, Plaintiff was directed by the Contracting Officer to cease work until it provided the COE with a performance bond equal to $500,000 and a payment bond equal to $1,000,000.

21. As of the date when its performance was stopped, it had completed at least199,023 square feet of roofing, at $1.99 per square foot ($378,145.77 total), 704 square feet of structural panels at $3.50 per square foot ($2,464.00) and 72 linear feet of joints and rafters at $3.97 per linear foot ($285.84); the total work done by Plaintiff amounted to at least $500,000, as was confirmed by representatives of the COE.

22. When Plaintiff attempted to provide the requested bonds, it discovered that it was required to procure them through a broker licensed in Florida.

23. As a small disadvantaged business Plaintiff had difficulty securing bonding through a Florida broker in the amount requested by the Contracting Officer; by the time it did so work had been completed under the Contract.

24. Plaintiff was able to procure the bonds requested by September 8, but was not permitted to return to work by the COE until it entered into a subcontract arrangement with a larger mainland-based firm.

25. When Plaintiff secured its subcontract arrangement with the larger firm, it discovered that all the ROEs issued to it had been completed and billed by other contractors.

26. At that point, RCPS was informed that it would receive a final payment from the COE once a determination was made as to how much work Plaintiff had completed.

27. Subsequently, in August of 2005, the Contracting Officer made a unilateral determination determined RCPS was entitled to a total of $308,613.90 for work done prior to it having been stopped.

28. RCPS did not agree with the determination, contending that it had done some $500,000 worth of work, as confirmed by the Contracting Officer's on-site representative.

29. By letter from RCPS 's counsel dated September 12, 2006 RCPS submitted a certified claim ("the Claim") in the amount of $430,123.10, representing, in part, the work Plaintiff had completed less the amount allowed by the COE in the unilateral determination ($308,613.90)..

30. Additionally, the claim included $141,128 identified by RCPS as having been for work done by RCPS's subcontractors on ROEs issued to RCPS but billed by other contractors.

31. The balance of the $430,123.10 was for ROEs issued to RCPs, but which were completed and billed by other contractors.

32. The claim requested a Final Decision by the Contracting Officer.

33. On April 12, 2007 the COE Contracting Officer issued a Final Decision denying the Claim, however the letter was addressed to RCPS (not its counsel who had submitted the Claim), and sent to an address at which RCPS was no longer located.

34. On May 17, 2007 the Assistant District Counsel for the COE sent the Final Decision by mail to RCPS's counsel, where it was received on May 21, 2007.

35. The instant is timely, having been brought within ONE (1) YEAR from the date Plaintiff's attorney received the Final Decision.

Wherefore, Plaintiff RC Professional Service, Inc. requests judgment against Defendant in the amount of $430,123.10.

Respectfully submitted,

Marc Lamer
Attorney for Plaintiff

Dated: May 16, 2008